UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM EDWARDS,

Plaintiff,

-v-

MARTIN HORN, *et al.*,

Defendants.

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3|8|2012
```

No. 10 Civ. 6194 (RJS) (JLC)

ORDER ADOPTING REPORT AND
RECOMMENDATION

RICHARD J. SULLIVAN, District Judge:

*Pro se* Plaintiff William Edwards brings this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, alleging that at various times, Defendants violated his constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments during his incarceration at five different facilities on Rikers Island. By Order dated September 1, 2010, this matter was referred to the Honorable James L. Cott, Magistrate Judge. On April 4, 2011, Defendants moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On March 3, 2011, Judge Cott set a deadline of March 4, 2011 for Plaintiff to submit an opposition to Defendants' motion. Although Judge Cott thrice extended this deadline – on May 18, 2011, June 8, 2011, and June 29, 2011 – Plaintiff never submitted an opposition. Accordingly, Judge Cott properly considered Defendants' motion fully submitted.

On February 14, 2012, Judge Cott issued the attached forty-six page Report and Recommendation (the "Report"), recommending that the motion to dismiss be granted except as to Plaintiff's retaliatory termination claim against Defendant Rosa to the extent that Plaintiff seeks nominal or punitive damages. In the Report, Judge Cott advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections. *See* 28 U.S.C.

§ 636(b)(1)(C); Fed. R. Civ. P. 72(b). No party has filed objections to the Report, and the time to do so has expired. *Cf. Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1993).

When no objections to a report and recommendation are made, the Court may adopt the report if there is no clear error on the face of the record. *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005); *La Torres v. Walker*, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). After reviewing the record, the Court finds that Judge Cott's well-reasoned and careful Report is not facially erroneous. Accordingly, the Court adopts the Report in its entirety and, for the reasons set forth therein, grants Defendants' motion to dismiss as to all but one of Plaintiff's claims. The court denies the motion as to Plaintiff's retaliatory termination claim against Defendant Rosa, and only to the extent that Plaintiff seeks nominal or punitive damages against her. The Clerk of the Court is respectfully directed to terminate the motion located at Doc. No. 88.

SO ORDERED.

Dated:      March 7, 2012
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

2

A copy of this Order has been mailed to:

William Edwards
660 Hegeman Ave
Apt #6-D
Brooklyn, NY 1120

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/14/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

WILLIAM EDWARDS,

     Plaintiff,

  -v.-

MARTIN HORN, et al.,

     Defendants.

-----------------------------------------------------------X

## REPORT & RECOMMENDATION

10 Civ. 6194 (RJS) (JLC)

(Non-ECF Case)

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Richard J. Sullivan, United States District Judge:**

Plaintiff William Edwards, proceeding pro se, brings this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 alleging that Defendants violated his constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments during his incarceration in various facilities on Rikers Island. Edwards also alleges that he was discriminated against in violation of the Americans with Disabilities Act. Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, I recommend that the motion to dismiss be granted except as to Edwards' retaliatory termination claim against Defendant Rosa.

## I.   BACKGROUND

### A.  Factual Background

The following facts are taken from the Complaint and are accepted as true for purposes of this motion. (See Complaint, dated June 23, 2010 ("Compl.") (Dkt. No. 2)). Edwards brings this suit pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 and Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 et seq., against 44 current and former New

York City employees and two John Doe Defendants:  Commissioner Martin Horn, Warden

Bailey, Warden J. Davis, Warden E. Duffy, Warden Michael Hourihan, Warden Riordan,

Warden Robert Shaw, Correctional Officer ("C.O.") Dinolfo, C.O. Grima, C.O. Hernandez, C.O.

Holmes, C.O. Lagos, C.O. Lewis, C.O. Maynard, C.O. Morales, C.O. Noon, C.O. Reyes, C.O.

Richardson, C.O. Rosa, C.O. Smalls, C.O. Smith, C.O. Sumpter, Captain Alleyve, Captain

Bethacourt, Captain Calle, Captain G. Davis, Captain Polak, Marybeth Campfield, Ms. Carrera,

Mrs. M. Cattafesta, Mr. K. Guerrant, Cook Hannah, Deputy Hill, Florence Hunter, Ms. Jenkins,

Ms. K. Johnson[1], Ms. G. Lee, Ms. P. Mimms, Mr. R. Mulvena, Ms. B. Musmacher, Ms. R.

Padmore, Karen Powell, James Robinson, and Ms. Steven (together, "Defendants").  (See

Compl. at 1-5).[2]

      Edwards alleges that Defendants deprived him of his constitutional rights under the First,

Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments during his incarceration at

several facilities on Rikers Island:  the Anna M. Kross Center ("AMKC"), the Eric M. Taylor

Center ("EMTC"), the George Motchan Detention Center ("GMDC"), the George R. Vierno

Center ("GRVC"), and the Robert N. Davoren Complex ("RNDC").  At the time he filed his

Complaint, Edwards was an inmate at the Clinton Correctional Facility, and he is currently on

parole.  (See Letter, dated Dec. 11, 2011 (Dkt. No. 135)).

      Throughout his roughly 100 paragraph, single-spaced, 25-page Complaint, Edwards does

not present his allegations by cause of action, nor does he clearly articulate exactly what causes

---

[1]     In the case caption on the first page of the Complaint, Edwards mistakenly identifies
Defendant Johnson as "Ms. K. Jonhson."  (Compl. at 1).

[2]     In Section I.b of the Complaint, Edwards lists 38 Defendants.  Six additional
Defendants—Carrera, Cattafesta, Duffy, Grima, Powell, and Steven—do not appear on
this list, but are named in the case caption on the first page of the Complaint.

of action he is asserting, as many allegations appear to overlap and lack clarity.[3]  Several of

Edwards' allegations deal with Defendants' actions in relation to a separate lawsuit Edwards

brought in the Northern District of New York, Edwards v. Selsky, No. 04 Civ. 493 (FJS) (DRH),

2008 WL 190385 (N.D.N.Y. Jan. 22, 2008) ("Selsky" or the "NDNY action"), which was

dismissed for failure to prosecute.  The Court has made every effort to identify and address all

possible claims asserted in the Complaint.[4]  The Court is able to identify 12 potential causes of

action spanning separate dates from July 25, 2007 to April 5, 2010.  Specifically, Edwards

asserts the following claims:  (1) verbal harassment; (2) deprivation of access to free telephone

calls; (3) deprivation of access to legal services; (4) mail tampering; (5) denial of required food

portions; (6) unconstitutional strip search; (7) violation of due process rights within the prison's

disciplinary and grievance system; (8) excessive force and denial of medical treatment; (9)

deprivation of access to the prison's grievance system; (10) retaliation; (11) conspiracy; and (12)

disability discrimination under the ADA.  Edwards seeks $75,000,000 in damages, attorneys'

fees, a reimbursement of penalties incurred due to two allegedly false infractions, injunctive

relief in the form of expunging those false infractions, injunctive relief terminating Defendants

from their positions in the New York City Department of Correction ("DOC") and permanently

---

[3]      Accordingly, while Defendants do not argue as much, the Complaint could also be
dismissed under Rule 8(a)(2), which requires a pleading to contain "a short and plain
statement" of the claims.

[4]      Edwards has attached more than 300 pages of documents to his Complaint, consisting of
grievance letters, notices of infraction, and inmate grievance committee decisions.  These
materials can be properly considered in deciding Defendants' motion to dismiss.  See,
e.g., Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted).  However, while
the Court will consider these materials in support of the claims asserted in the
Complaint—indeed, nearly every paragraph advises the reader to "see attached exhibit"
but fails to cite to a specific page—the Court will not attempt to identify the potentially
innumerable causes of action that could be construed from the hundreds of allegations
contained solely in the attachments.

enjoining them from city, state, or federal employment, and a permanent restraining order to

prevent Defendants from committing any future similar violations.  (Compl. ¶ V).  Edwards does

not present these allegations in a narrative fashion, but instead describes dozens of grievance

letters that he has submitted to DOC staff at the various Rikers Island facilities over the course of

nearly three years.  To avoid repetition, the Court will describe the factual background relating to

Edwards' specific allegations in the context of the relevant legal discussion below.

**B.**     **Procedural Background**

Edwards filed the Complaint on August 18, 2010.  (Dkt. No. 2).  On October 29, 2010,

the United States Marshals executed service of the Summons and Complaint on 32 of the 44

named defendants.[5]  Over the course of the next several months, with the assistance of the Office

of Corporation Counsel, the United States Marshals, and the Court, Edwards has attempted to

serve the remaining 12 named defendants.  (See Dkt. Nos. 56, 62, 69, 70, 75, 119, 120, 129).  To

date, Edwards has successfully served nine additional Defendants and appears to have served a

number of Defendants twice.[6]  Accordingly, there are three named Defendants who have not

---

[5]     This set of defendants consists of Sumpter (Dkt. No. 11), Horn (Dkt. No. 12),
        Cattafesta (Dkt. No. 13), Hunter (Dkt. No. 15), Guerrant (Dkt. No. 17), Lagos (Dkt. No.
        18), Shaw (Dkt. No. 19), Campfield (Dkt. No. 20), Reyes (Dkt. No. 21), Davis (Dkt. No.
        22), Hernandez (Dkt. No. 23), Holmes (Dkt. No. 24), Rosa (Dkt. No. 25), Smith (Dkt.
        No. 26), Mulvena (Dkt. No. 27), Polak (Dkt. No. 28), Noon (Dkt. No. 29), Duffy (Dkt.
        No. 31), Dinolfo (Dkt. No. 32), Mimms (Dkt. No. 34), Bailey (Dkt. No. 35), Lewis (Dkt.
        No. 36), Alleyve (Dkt. No. 37), Calle (Dkt. No. 39), Hannah (Dkt. No. 41), Hourihan
        (Dkt. No. 43), Jenkins (Dkt. No. 44), Maynard (Dkt. No. 45), Padmore (Dkt. No. 48),
        Richardson (Dkt. No. 49), Riordan (Dkt. No. 50), and Smalls (Dkt. No. 51).

[6]     Since October 29, 2010, Edwards has served the following Defendants:  Lee (service
        executed on Dec. 2, 2010 (Dkt. No. 61)); Powell (service executed on Mar. 29, 2011
        (Dkt. No. 98)); Steven (service executed on Feb. 24, 2011 (Dkt. No. 110); service
        executed on Mar. 31, 2011 (Dkt. No. 99)); Grima (service executed on Mar. 2, 2011 (Dkt.
        No. 107); service executed on Mar. 14, 2011 (Dkt. No. 100)); Robinson (service executed
        on Mar. 29, 2011 (Dkt. No. 101)); Musmacher (service executed on Mar. 14, 2011 (Dkt.
        No. 102)); Hill (service executed on Feb. 24, 2011 (Dkt. No. 112); service executed on

been served—Bethacourt, Davis, and Johnson—and two John Doe Defendants who have not been identified.[7]

During the pendency of his lawsuit, Edwards has submitted several requests to the Court. By Order dated November 1, 2010, the Court denied Edwards' request for an order prohibiting certain employees at the Southport Correctional Facility, where Edwards was incarcerated at the time, from tampering with his legal and personal mail.  (Dkt. No. 8).  By Orders dated November 30, 2010 and April 14, 2011, the Court denied Edwards' motions for default judgment against certain Defendants (Dkt. Nos. 56, 92), and Edwards' interlocutory appeal of the November 30 Order was denied by the Second Circuit on May 26, 2011.  (Dkt. No. 118).  By Orders dated February 9, 2011, I declined Edwards' request that I disqualify myself from this action and also denied his motion for the appointment of counsel.  (Dkt. Nos. 73-74).  Lastly, on March 8, 2011, I denied Edwards' request for sanctions in connection with Corporation Counsel's providing Edwards with service addresses for Defendants.  (Dkt. No. 81).

---

Mar. 14, 2011 (Dkt. No. 103)); Horn (service executed on Mar. 31, 2011 (Dkt. No. 97)); and Carrera (service executed on Oct. 6, 2011 (Dkt. No. 131)).

[7]    As to Defendant Bethacourt, the Office of Corporation Counsel advised the Court by letter dated June 8, 2011 that it is unable to locate records that would assist in identifying Bethacourt.  Accordingly, as stated in the Court's Order dated June 9, 2011 (Dkt. No. 120), it does not appear that any further action can be taken to identify this Defendant. As to Defendant Davis, the Office of Corporation Counsel advised the Court by letter dated February 16, 2011 that the Legal Bureau of the DOC would accept service on his behalf.  By Order dated September 1, 2011, the Court directed Edwards to serve Davis by September 26, 2011 (Dkt. No. 129), but the docket sheet does not reflect any attempt to effect service.  Lastly, on October 31, 2011, Edwards attempted to serve Defendant Johnson but was unsuccessful because she was not located at the address provided by the Office of Corporation Counsel.  (See Order, dated Dec. 12, 2011 (Dkt. No. 134), at 1). Edwards was directed to again attempt to serve Johnson by January 27, 2012 (Id.), but no proof of service has been filed.

On April 4, 2011, Defendants moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (See Defendants' Memorandum of Law in Support of Motion to Dismiss, dated Apr. 4, 2011 ("Def. Mem.") (Dkt. No. 89)).[8]  Defendants assert that Edwards has failed to state a claim as to his verbal harassment, deprivation of telephone access, unconstitutional strip search, mail tampering, denial of food, denial of legal services, due process, grievance processing and protocol, excessive force and medical treatment, conspiracy, and retaliation causes of action.  (Def. Mem. at 16-45).  In addition, Defendants argue that Edwards' claims against Defendants Bailey, Cattafesta, Davis, Hill, Horn, Hourihan, Powell, and Riordan fail for lack of personal involvement, all defendants are entitled to qualified immunity, and Edwards' claims are barred by the Prison Litigation Reform Act (the "PLRA").[9]  (Id. at 14-

---

[8]     Although the motion to dismiss was not filed on behalf of any of the unserved Defendants (see Def. Mem. at 2-3 n.2), Counsel has stated that the arguments raised apply equally to all Defendants.  Accordingly, in light of my recommendation to dismiss all claims against all Defendants except the retaliatory termination claim against Defendant Rosa, see infra Section II.K, the Court should sua sponte dismiss the Complaint as to Defendants Bethacourt, Davis, John Doe # 1, John Doe # 2, and Johnson.

[9]     Defendants have not moved to dismiss any of Edwards' claims on the ground that he has failed to exhaust his administrative remedies, as he is required to have done under the PLRA.  See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  While exhaustion under Section 1997e(a) is mandatory, see Porter v. Nussle, 534 U.S. 516, 524 (2002), non-exhaustion "is an affirmative defense that is waiveable."  Handberry v. Thompson, 446 F.3d 335, 342 (2d Cir. 2006) (citations, alterations, and quotation marks omitted); see also Jones v. Bock, 549 U.S. 199, 216 (2007); Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).  Here, because Defendants have not argued that Edwards failed to exhaust his administrative remedies, the non-exhaustion defense has been waived.  See, e.g., Ortiz v. Dep't of Corr. of the City of N.Y., No. 08 Civ. 2195 (RJS) (HBP), 2011 WL 2638137, at *4 (S.D.N.Y. Apr. 29, 2011) (defendant's failure to raise non-exhaustion constitutes waiver) (Report and Recommendation), adopted, 2011 WL 2638140 (S.D.N.Y. Jul. 5, 2011); Hobson v. Fischer, No. 10 Civ. 5512 (SAS), 2011 WL 891314, at *2 n.22 (S.D.N.Y. Mar. 14, 2011) (finding waiver even where grievance "appears not to have been fully exhausted" under PLRA).

16, 45-48).  Pursuant to the Court's Order dated March 3, 2011, Edwards' deadline to submit an opposition to Defendants' motion was May 4, 2011.  (Dkt. No. 80).  However, despite receiving several extensions—first to May 18 (Dkt. No. 90) then to June 8 (Dkt. No. 116) and June 29 (Dkt. No. 122)—Edwards has not submitted any opposition.  Accordingly, the Court considers Defendants' motion fully submitted.

## II.    DISCUSSION

### A.    Applicable Legal Standards

A plaintiff's failure to oppose a 12(b)(6) motion does not by itself merit dismissal of a complaint.  See Goldberg v. Danaher, 599 F.3d 181, 183-84 (2d Cir. 2010); McCall v. Pataki, 232 F.3d 321, 322-23 (2d Cir. 2000).  "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.  If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."  Id.  Consequently, as with all Rule 12(b)(6) motions, in deciding an unopposed motion to dismiss, a court is to "assume the truth of a pleading's factual allegations and test only its legal sufficiency" according to the principles below.  Id. at 322.

A complaint will not survive a 12(b)(6) motion to dismiss if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Although "a complaint attacked by a 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554 (2007) (quotation marks and citations omitted).  "To survive a motion to dismiss, the complaint must set out only enough facts to state a claim to relief that is

plausible on its face." <u>Hollander v. Copacabana Nightclub</u>, 624 F.3d 30, 32 (2d Cir. 2010)

(citing <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)).  "Determining whether a complaint

states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court

to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950 (citation

omitted).  A complaint thus may only survive a 12(b)(6) motion to dismiss if it has "facial

plausibility" and pleads enough facts to allow the court to "draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Id.</u> at 1949.

Given that Edwards is proceeding <u>pro se</u>, the Court must "construe [his Amended

Complaint] broadly and interpret it to raise the strongest arguments it suggests." <u>Sharpe v.

Conole</u>, 386 F.3d 482, 484 (2d Cir. 2004) (citation omitted).  Furthermore, "when the plaintiff

proceeds <u>pro se</u> . . . a court is obliged to construe his pleadings liberally, particularly when they

allege civil rights violations." <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 200 (2d Cir. 2004)

(citation omitted).  Nevertheless, "a <u>pro se</u> litigant [is] bound by the same rules of law . . . as

those [litigants] represented by counsel." <u>Fertig v. HRA Med. Assistance Program</u>, No. 10 Civ.

8191 (RPP), 2011 WL 1795235, at *4 (S.D.N.Y. May 6, 2011) (quotation marks and citation

omitted).

### B.    Verbal Harassment

Edwards asserts that several Defendants, in violation of Section 1983, used harassing,

threatening, and profane language towards him on 17 separate occasions taking place between

July 25, 2007 and September 1, 2008.  (Compl. ¶¶ III, 2, 6, 8, 17, 19, 22, 24, 30, 33, 37, 38, 53,

55, 61, 83, 91(b)).  In separate allegations, he claims that Defendants Campfield, Dinolfo, Grima,

Hannah, Hernandez, Holmes, Lewis, Maynard, Morales, Noon, Reyes, Richardson, Smalls, and

Smith, called him a "snitch" in front of other inmates, mocked his disability, falsely informed

him that he had a visitor when in fact he did not have a visitor, and directed racial slurs and profane language toward him.  (Id.).  These claims should be dismissed.  The Eighth Amendment prohibits the imposition of cruel and unusual punishment, Estelle v. Gamble, 429 U.S. 97, 102 (1976), but its protection does not extend to verbal harassment of an inmate by correction officers without any resulting "appreciable injury."  Roseboro v. Gillespie, 791 F. Supp. 2d 353, 373 (S.D.N.Y. 2011) (quoting Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986)).

Verbal harassment, by itself, is not a constitutional violation.  See, e.g., Tafari v. McCarthy, 714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010) ("[v]erbal harassment itself does not rise to the level of a constitutional violation[,]" and "[v]erbal abuse, vulgarity, and even threats are insufficient to rise to the level of constitutional violations") (quotation marks and citation omitted); Davidson v. Bartholome, 460 F. Supp. 2d 436, 446 (S.D.N.Y. 2006) (no relief to inmate "simply because [an officer] made a hostile or derogatory comment"); Lunney v. Brureton, No. 04 Civ. 2438 (LAK) (GWG), 2005 WL 121720, at *11 (S.D.N.Y. Jan. 21, 2005) (no claim because merely "insulting" or "disrespectful" comments "do not give rise to a constitutional violation") (quotation marks and citations omitted) (Report and Recommendation), adopted, 2005 WL 433285 (S.D.N.Y. Feb. 23, 2005).  Absent any appreciable injury, courts routinely dismiss claims of verbal harassment brought under Section 1983.  See, e.g., Felder v. Filion, 368 F. App'x 253, 256 (2d Cir. 2010) (verbal harassment did not violate Eighth Amendment where plaintiff did not present evidence of resulting injury); Johnson v. Eggersdorf, 8 F. App'x 140, 143 (2d Cir. 2001) ("allegations of verbal harassment are insufficient to base a [Section] 1983 claim if no specific injury is alleged").  Because Edwards does not allege any injury whatsoever, let alone one that could be considered "appreciable," Defendants' alleged

threats, verbal harassment, or profane language do not give rise to constitutional violations and should therefore be dismissed.

### C.   Denial of Required Telephone Calls

Edwards alleges that since his incarceration began on January 23, 2008, he has not been provided with a free telephone call as required by the "DOC Telephone System." (Compl. ¶ 46).[10] Edwards further alleges that he submitted a grievance on June 3, 2008 regarding his deprivation of free telephone calls. (Id.). However, "[p]hone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world." Henry v. Davis, No. 10 Civ. 7575 (PAC) (JLC), 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011) (citing cases) (Report and Recommendation), adopted, 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011). Because inmates "have no right to unlimited telephone calls[,]" Bellamy v. McMickens, 692 F. Supp. 205, 214 (S.D.N.Y. 1998) (citation omitted), Edwards must, but fails to, allege that he was stripped of alternate methods of communication to state a violation of his constitutional rights. See, e.g., Paulino v. Menifee, No. 00 Civ. 5719 (RCC) (KNF), 2001 WL 243207, at *2 (S.D.N.Y. Mar. 9, 2001) (refusing to issue injunction restoring phone privileges where inmate did not allege that alternate means of communication were inadequate). Edwards' claim regarding the denial of free telephone calls should therefore be dismissed.

---

[10]   In the context of his claim for the denial of free telephone calls, Edwards provides different dates for the start of his incarceration, stating January 23, 2008 in his Complaint and January 24, 2008 in an attached exhibit. (Compl. ¶ 46; Dkt. No. 2-3 at 4). These cited dates, however, appear to be inconsistent with the commencement of Edwards' incarceration, as his earliest allegation in this lawsuit takes place on July 25, 2007 while he was housed at the AMKC. (Id. ¶ III). In any event, regardless of whether Edwards has been denied free telephone calls since July 2007 or January 2008, his cause of action should be dismissed because he has failed to state an actionable claim.

### D.     Deprivation of Access to Legal Services

Edwards alleges numerous deprivations of access to legal services by Defendants Campfield, Musmacher, and Smalls.  As to Campfield, Edwards alleges that in March 2008 she denied him a legal manila envelope, lost his legal documents pertaining to the NDNY action, and denied him legal services.  (Compl. ¶¶ 31, 36).  As to Musmacher, Edwards asserts that she denied him legal services for more than a month around August 2008 and discriminated against him by providing legal services to Latino detainees when Edwards was "next . . . on line" to receive such services.  (Id. ¶¶ 56-57).  As to Smalls, Edwards claims that she denied him extra time in the prison facility's law library in August 2008.  (Id. ¶ 61).  Each of these claims should be dismissed.

The Supreme Court has recognized that an inmate does not have "an abstract, freestanding right to a law library or legal assistance." Lewis v. Casey, 518 U.S. 343, 351 (1996).  Rather, a prison facility must ensure that its inmates have "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" Id. (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)).  Accordingly, for a defendant's conduct to provide a basis for an inmate to invoke his right of access to the courts, it must cause "actual injury" or "materially prejudice[]" the inmate.  Salvatierra v. Connolly, No. 09 Civ. 3722 (SHS) (DF), 2010 WL 5480756, at *21 (S.D.N.Y. Sept. 1, 2010) (citations and quotation marks omitted) (Report and Recommendation), adopted, 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011).

Here, Edwards does not state sufficient facts to constitute any injury or material prejudice.  He does not claim any injury suffered because of Defendants' alleged denials of legal services, legal supplies, extra time in the law library, or alleged discrimination in favor of Latino detainees.  While he asserts that Campfield's losing his legal documents in connection with the

11

NDNY action prevented him from "prosecuting" that action (Compl. ¶ 36), he fails to provide any specifics as to his purported inability to prosecute.  He does not elaborate on, for example, what documents he believes were lost and what actions he was prevented from taking in his litigation, which is especially relevant since Edwards appears to have participated in the NDNY lawsuit in some capacity, but failed to keep the court apprised of his mailing address.  <u>See</u> <u>Selsky</u>, 2008 WL 190385, at *1-3.  Accordingly, because Edwards has not identified any injury or material prejudice as a result of his alleged deprivation of access to legal services, these claims should be dismissed.

### E.    Mail Tampering

Edwards' mail tampering claims are based on allegations of interference with his outgoing non-legal mail and his incoming and outgoing legal mail at the EMTC and AMKC.  Specifically, Edwards first alleges that on November 1, 2007 he wrote a letter to Michael Caruso at the DOC that was never sent from the EMTC.  (Compl. ¶ 16).  Second, Edwards alleges that his "legal mail" addressed to Caruso never left the EMTC and was returned to him on November 27, 2007.  (<u>Id.</u> ¶ 27).  Next, Edwards submitted a grievance on September 8, 2008 alleging that his "personal and legal mail" addressed to a co-defendant never left the AMKC because it was returned for insufficient postage despite being marked with a postage stamp.  (<u>Id.</u> ¶ 70).  Edwards' fourth claim of mail tampering relates to the NDNY action.  He asserts that Defendant Davis failed to forward his incoming legal mail to the correct address, despite Edwards' instruction for him to do so, and that as a result, his NDNY lawsuit was dismissed.  (<u>Id.</u> ¶ 47).  Lastly, Edwards alludes to an allegation of tampering with his outgoing "legal and personal mail" against unnamed AMKC staff, which he documented in a November 18, 2008 grievance letter.  (<u>Id.</u> ¶ 94).  None of these claims should withstand a motion to dismiss.

Both legal and non-legal mail are protected by the First Amendment's "right to the free flow of incoming and outgoing mail." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). "[A] prison official's interference with an inmate's mail may violate his First Amendment right to free speech, which includes the 'right to be free from unjustified governmental interference with communication.'" Cancel v. Goord, No. 00 Civ. 2042 (LMM), 2001 WL 303713, at *5 (S.D.N.Y. Mar. 29, 2001) (citation omitted). In addition, "the Supreme Court has recognized that 'the implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials.'" Id. (quoting Thornburgh v. Abbott, 490 U.S. 401, 413 (1989)).

With these principles in mind, Edwards' allegations as to outgoing non-legal mail—non-legal mail being afforded less protection than legal mail, Davis, 320 F.3d at 351—fail to state a claim because he does not assert that Defendants actually tampered with his mail, only that his mail never left the facility. Moreover, instead of establishing plausible mail tampering claims for his outgoing non-legal mail, Edwards' alleged facts make mail tampering an unlikely possibility. For example, Edwards' allegation that his November 1, 2007 letter to Michael Caruso never left the EMTC is based solely on the fact that Caruso never answered the letter. (Compl. ¶ 16). Caruso's failure to respond to Edwards' letter, of course, does not necessarily suggest that it was never sent by EMTC staff. Absent any allegations that Defendants opened the letter, withheld it from being sent, or otherwise took any adverse action to make it plausible that EMTC staff tampered with Edwards' outgoing mail, Edwards' claim is merely speculative. Similarly, Edwards' allegation in his September 8, 2008 grievance that a letter to a co-defendant was returned to him for insufficient postage despite having a postage stamp does not suggest mail tampering, but rather that Edwards had failed to affix sufficient postage. (Id. ¶ 70). In any

13

event, an isolated failure to mail an inmate's letter does not state a constitutional violation.  See,

e.g., Battice v. Phillip, No. 04 Civ. 669 (FB) (LB), 2006 WL 2190565, at *6 (E.D.N.Y. Aug. 2,

2006) (defendant's failure to deliver plaintiff's mail, even if intentional, is "simply de minimis

and therefore outside the ambit of constitutional protection") (citation and quotation marks

omitted).  Finally, Edwards' claim regarding mail tampering in November 2008 is devoid of any

facts that could state a cause of action.  (Compl. ¶ 94).

    As to Edwards' claims regarding interference with his incoming and outgoing legal mail,

the Court notes that such interference "implicates a prison inmate's rights to access to the courts

and free speech as guaranteed by the First and Fourteenth Amendments to the U.S.

Constitution."  Davis, 320 F.3d at 351.  To survive a motion to dismiss, a plaintiff must allege

that correction officers "regularly and unjustifiably" interfered with his mail, depriving him of

his constitutional rights.  Shepherd v. Fisher, No. 08 Civ. 9297 (LTS) (RLE), 2011 WL 3278966,

at *2 (S.D.N.Y. July 27, 2011) (citations and quotation marks omitted).  To assert such a claim, a

prisoner must allege that the defendant's actions (1) were "deliberate and malicious" and (2)

"resulted in actual injury" to the plaintiff.  Cancel, 2001 WL 303713, at *4 (quoted in Davis, 320

F.3d at 351).  Actual injury exists where interference with legal mail results in "the dismissal of

an otherwise meritorious legal claim."  Id.  However, "[m]ere delay in being able to work on

one's legal action or communicate with the courts does not rise to the level of a constitutional

violation."  Id. at 352 (citations and quotation marks omitted).

    None of Edwards' claims of interference with his legal mail—both those related to

incoming and outgoing mail—sufficiently states an actual injury.  Edwards fails to allege that he

suffered any injury in connection with DOC staff's alleged failure to send his outgoing legal mail

on November 27, 2007, September 8, 2008, or November 18, 2008, assuming that Edwards'

"legal mail" is in fact legal mail.  (Compl. ¶¶ 27, 70, 94).  For the same reason, Edwards' claim

pertaining to incoming mail from the NDNY does not state a constitutional violation.  This claim

is based on Defendant Davis' alleged failure to adhere to Edwards' request to have his mail sent

to a forwarding address.  For support, Edwards appears to rely on language in Judge Scullin's

order that the magistrate judge's report and recommendation was returned to the Court marked

"unable to forward."  (Compl. ¶ 47).  The NDNY action, however, was not dismissed solely

because certain documents were returned to the Court.  Rather, the case was dismissed for

Edwards' failure, for more than one year, to prosecute the action, which included his failure to

keep the court and defendants apprised of his address, appear for a deposition, or pay a sanction,

despite being aware of the pending litigation.  See Selsky, 2008 WL 190385, at *1-3.  Even if

Davis had complied with Edwards' forwarding request, the court's decision to dismiss the

complaint for Edwards' "repeated and ongoing failures to fulfill his obligations to notify the

[c]ourt and counsel of his address and to cooperate in discovery" would likely have remained

unchanged.  Id. at *3.  The alleged failure to forward did not, therefore, cause "the dismissal of

an otherwise meritorious legal claim."  Cancel, 2001 WL 303713, at *4 (citation omitted).

        Moreover, Edwards does not plead that Defendants blocked his outgoing legal mail in

connection with the NDNY action.  Indeed, Edwards could not assert such an argument, since, as

Judge Scullin noted, he had previously mailed documents to the court during the pendency of his

lawsuit.  See Selsky, 2008 WL 190385, at *1-2.  Accordingly, Edwards cannot establish the

requisite injury needed to state a cause of action for the deprivation of his constitutional right of

access to the courts.  Edwards' mail tampering claims should therefore be dismissed.

### F.      Denial of Required Food Portions

Edwards alleges that on several occasions Defendants Lagos, Lewis, and Richardson deprived him of required food portions, including "prescribed therapeutic diet 'soy milk'" on April 19, 2008 (Compl. ¶ 38), a second chicken patty on or around May 2008 (Id. ¶ 43), a "morning meal" on July 31, 2008 (Id. ¶ 53), and an "afternoon meal" on or around October 2008. (Id. ¶ 90).  Each of these claims should be dismissed.  The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam) (quotation marks and citation omitted).  Courts have found the Eighth Amendment to be implicated only where a prisoner's allegations involve a serious and continued deprivation of nutritionally adequate food.  See, e.g., Reeder v. Artus, No. 09 Civ. 575 (DNH) (DRH), 2010 WL 3636138, at *11 (N.D.N.Y. July 27, 2010) (seven out of twelve days without meals constituted sufficient deprivation to survive motion to dismiss) (Report and Recommendation), adopted, 2010 WL 3636132 (N.D.N.Y. Sept. 9, 2010).

Edwards does not allege that the alleged denials of food placed his health and well being in any immediate danger.  See, e.g, Martinez v. Lape, No. 09 Civ. 0665 (TJM) (RFT), 2011 WL 4527943, at *9 (N.D.N.Y. Mar. 28, 2011) (Report and Recommendation), adopted, 2011 WL 4528980 (N.D.N.Y. Sept. 28, 2011) (no Eighth Amendment claim where inmate failed to allege how expired food and juice posed an immediate risk to health); Bee v. Krupp, No. 08 Civ. 10141 (SHS) (KNF), 2009 WL 2981910, at *3 (S.D.N.Y. Sept. 15, 2009) ("visible globs of spit" in food did not violate Eighth Amendment).  Nor do the allegations, which are alleged to have

taken place on four separate dates over a span of six months, suggest that Edwards was in any

danger.  Accordingly, Edwards' claims regarding deprivation of meals should be dismissed.

### G.    Unconstitutional Strip Search

Edwards alleges that an unspecified officer subjected him to an "institutional" strip

search on an unspecified date in violation of the Fourth Amendment.  (Compl. ¶ 13).  Edwards

argues that this strip search was unconstitutional because he was convicted of a misdemeanor

and not a felony.  (Id.).  While the Fourth Amendment prohibits "unreasonable searches," Bell v.

Wolfish, 441 U.S. 520, 558 (1979) (citation omitted), it is not unreasonable for prison officials to

perform routine random strip searches on prison inmates.  See N.G. v. Connecticut, 382 F.3d

225, 230-32 (2d Cir. 2004).  Edwards' reliance on the distinction between inmates convicted of

misdemeanors and those convicted of felonies is misplaced, as that distinction is only relevant as

to pre-trial detainees.  See Shain v. Ellison, 356 F.3d 211, 214 (2d Cir. 2004) ("clearly

established Fourth Amendment precedent . . . preclude[s] jails from strip searching misdemeanor

arrestees absent a reasonable suspicion that weapons or other contraband were concealed");

Walsh v. Franco, 849 F.2d 66, 70 (2d Cir. 1988) ("indiscriminate strip-searching of misdemeanor

arrestees is unconstitutional").  Here, Edwards admits that he was convicted at the time of his

strip search.  (Compl. ¶ 13).  See, e.g., Castro-Sanchez v. N.Y. State Dep't of Corr. Servs., No.

10 Civ. 8314 (DLC), 2011 WL 6057837, at *8 (S.D.N.Y. Dec. 6, 2011) (strip search claim

dismissed because routine random searches of inmates are constitutional).  Accordingly,

Edwards' claim should be dismissed.

### H.    Deprivation of Due Process Rights Within Prison's Disciplinary System

Edwards alleges that he was denied certain rights during two disciplinary proceedings

heard by Defendant Davis on September 30, 2008, which can be broadly construed as a claim

asserting a deprivation of procedural due process under the Fourteenth Amendment.  (Compl. ¶¶ 86, 87b, 89, 95, 97-99).  The disciplinary hearings appear to relate to Edwards' alleged violations of "numerous [] rules within the inmate misbehavior rule book" on September 20, 2008 and September 24, 2008.  (Id. ¶¶ 86, 87).  Edwards takes issue with several aspects of the disciplinary hearings, including that:  (1) Davis found him guilty of the infraction without conducting an investigation into Edwards' claim that he never received a copy of the rule book (Id. ¶ 86); (2) Davis failed to provide him with certain documentary evidence that "could have help[ed]" Edwards defend himself, including Edwards' "orange detention card," his "injury report," and a video tape of the alleged infraction (Id. ¶¶ 86, 87b); (3) no witnesses to Edwards' violations "endor[s]e[d]" the infraction against him (Id. ¶ 87); and (4) Edwards never received responses to notices of appeal and letters submitted to Horn, Hourihan, Hunter, and Robinson regarding his fine and punitive segregation.  (Id. ¶¶ 86, 87b, 89, 94-99).  In addition, Edwards appears to challenge his resulting discipline, which included a $25.00 "surcharge" and 30 days of punitive segregation.  (Id. ¶¶ 87, 87b).

Edwards' cause of action for deprivation of his procedural due process rights fails because he does not allege sufficient facts to state an actionable claim.  "In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution."  Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001) (citation and quotation marks omitted).  Prisoners subject to disciplinary proceedings can show a liberty interest only where "an institution's disciplinary decision results in an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'"  Luna v. Pico, 356 F.3d 481, 487 n.3 (2d Cir. 2004) (quoting Sandin v. Connor, 515 U.S. 472, 484 (1995)).  In determining whether an inmate endured atypical and significant hardship during punitive

18

segregation, the Second Circuit instructs courts to consider both the duration and conditions of

the confinement.  See Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) ("[f]actors relevant to

determining" whether inmate endured atypical hardship include "the extent to which the

conditions of the disciplinary segregation differ from other routine prison conditions and the

duration of the disciplinary segregation imposed compared to discretionary confinement")

(quotation marks and citation omitted).

   The Second Circuit has expressly declined to provide a bright-line rule as to what length

of time in punitive confinement implicates a prisoner's constitutional rights; however, general

guidelines have been defined.  See id.  Confinement for 101 days or fewer under typical punitive

segregation conditions "generally do[es] not constitute 'atypical' conditions of confinement."

Bunting v. Nagy, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (quoting Sealey v. Giltner, 197 F.3d

578, 589 (2d Cir. 1999)); Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000).  By contrast, 305

days or more of confinement has been deemed an atypical and a significant hardship.  Id. at 231-

32.  Even if an inmate is segregated for fewer than 101 days, a violation of his liberty interest

may be implicated if "the conditions were more severe than the normal [punitive segregation]

conditions . . . or a more fully developed record showed that even relatively brief confinements

under normal [punitive segregation] conditions were, in fact, atypical."  Davis v. Barrett, 576

F.3d 129, 133 (2d Cir. 2009) (quoting Palmer, 364 F.3d at 65); see also Ortiz v. McBride, 380

F.3d 649, 654-55 (2d Cir. 2004).  Indeed, "'the conditions of confinement are a distinct and

equally important consideration' in determining whether the prisoner has suffered a due process

violation."  Sales v. Barizone, No. 03 Civ. 6691 (RJH), 2004 WL 2781752, at *6 (S.D.N.Y. Dec.

2, 2004) (quoting Palmer, 364 F.3d at 64-65).

Here, Edwards claims that he was confined to punitive segregation for 30 days. Several courts have concluded that, absent unusual conditions, 30 days of segregation is not an atypical or significant hardship under <u>Sandin</u>. <u>See</u>, <u>e.g.</u>, <u>Sandin</u>, 515 U.S. at 486 (30 days' disciplinary segregation not atypical and significant hardship); <u>Duncan v. Keane</u>, No. 95 Civ. 1090 (SHS), 1997 WL 328070, at *2 (S.D.N.Y. June 13, 1997) (30 days in keeplock not atypical or significant hardship) (citation omitted); <u>Harris v. Keane</u>, 962 F. Supp. 397, 404 (S.D.N.Y. 1997) (23 days in keeplock not atypical or significant hardship as "[t]he Second Circuit's post-<u>Sandin</u> decisions are unanimous that keeplock of 60 days or less in New York prisons is not an atypical hardship") (quotation marks and citations omitted); <u>Zamakshari v. Dvoskin</u>, 899 F. Supp. 1097, 1108 (S.D.N.Y. 1995) (60 days in confinement does not implicate liberty interest). Given the duration of his segregation and Edwards' failure to allege that the conditions of his confinement were atypical and significant, Edwards' punishment does not implicate a liberty interest. Similarly, Edwards' $25.00 "surcharge" was not an atypical hardship. <u>See</u>, <u>e.g.</u>, <u>Byrd v. Cornell Corr., Inc</u>, 60 F. App'x 191, 193-94 (10th Cir. 2003) ($50 fine and 30 days' segregation not atypical and significant hardship). Thus, neither Edwards' punitive segregation nor his $25 fine implicates the requisite liberty interest to state a due process claim.[11] Because of the absence of

---

[11]    Edwards also alleges a claim for the deprivation of his procedural due process rights in connection with a September 24, 2008 disciplinary hearing. This claim fails because Edwards cannot establish the requisite liberty interest, as he does not allege that he was subject to any discipline as a result of Davis' finding him guilty on September 24, 2008. (Compl. ¶ 86).

Even if Edwards had alleged disciplinary confinement resulting from the September 28 hearing, and assuming that that confinement implicated a liberty interest under the Fourteenth Amendment, Edwards still cannot state a claim for deprivation of due process. Citing to the Notice of Disciplinary Disposition Form #6500D attached to the Complaint (Dkt. No. 2-7 at 1), Edwards alleges that he was "never called down" for the hearing and that the hearing officer, Defendant Davis, was biased in favor of finding him guilty of the underlying infraction. (Compl. ¶ 86). While an inmate "has a right to a fair and impartial

any protected liberty interest—and because Edwards' allegations cannot be construed to allege a protected property interest—any failures by the hearing officer to conduct a thorough investigation of Edwards' claims, including the provision of certain documentary evidence and witnesses, do not support a cause of action for the denial of due process. See, e.g., Torres v. Mazzuca, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2003) (inmate cannot claim due process violations at hearing where 12-day disciplinary confinement did not implicate protected liberty interest). Edwards' procedural due process claims should therefore be dismissed.

## I.     Excessive Force and Denial of Required Medical Treatment

Edwards asserts two allegations of physical injury, which the Court construes as excessive force claims, and a related allegation that he was denied medical treatment. (Compl. ¶¶ 91, 91b). Edwards asserts that on November 1, 2008, Defendant Grima hit him in the head with a "pushdraw" and then refused Edwards' request for medical treatment. (Id. ¶ 91). He also argues that Grima inflicted "personal physical harm" upon him after Grima pressed the "emergency personal alarm device." (Id. ¶ 91b). Neither of these claims should survive Defendants' motion to dismiss.

The constitutional basis for Edwards' excessive force and deliberate indifference to medical needs claims is the Eighth Amendment's ban on cruel and unusual punishment. See Graham v. Connor, 490 U.S. 386, 394 (1989); Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (per curiam). Any actionable claim under the Eighth Amendment consists of a subjective

---

hearing officer[,]" Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir. 1999) (citation omitted), and one who "does not prejudge the evidence[,]" Patterson v. Coughlin, 905 F.2d 564, 570 (2d Cir. 1990), Edwards fails to plead any specific facts, beyond his conclusory allegation of bias, to suggest that Davis was predisposed to finding him guilty. Moreover, despite Edwards' claim that he was never called down for a disciplinary hearing, Edwards' signature appears next to a notation on the Form #6500D that the hearing was adjourned by Edwards himself.

component, which focuses on the defendant's motive for his conduct, and an objective

component, which focuses on the conduct's effect.  See, e.g., Wright v. Goord, 554 F.3d 255,

268 (2d Cir. 2009).  The subjective component "requires a showing that the defendant had the

necessary level of culpability, shown by actions characterized by wantonness . . . "  Id. (citations

and quotation marks omitted).  In the excessive force context, this means "whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  In the medical needs context, the

defendant must act with a "sufficiently culpable state of mind[,]" Wilson v. Seiter, 501 U.S. 294,

297 (1991), which means that he must "know[] of and disregard[] an excessive risk to inmate

health or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The Eighth Amendment's objective component

"focuses on the harm done, in light of contemporary standards of decency" and whether "the

alleged wrongdoing was objectively harmful enough to establish a constitutional violation."

Wright, 554 F.3d at 268 (citations and quotation marks omitted).  For deliberate indifference

claims, "the alleged deprivation must be sufficiently serious . . . that a condition of urgency, one

that may produce death, degeneration, or extreme pain exists."  Hathaway v. Coughlin, 99 F.3d

550, 553 (2d Cir. 1996) (citations and quotation marks omitted).

      Edwards' allegations of excessive force and denial of medical treatment fail to meet

either the subjective or objective components under the Eighth Amendment.  Both claims of

excessive force are devoid of any specific information regarding the extent of a temporary or

permanent injury, if any, and the level of pain that Edwards endured.  The entirety of Edwards'

first allegation of excessive force is that Grima "hit [him] in [the] head with the pushdraw that's

part of the officers [sic] station" (Compl. ¶ 91), which falls far short of what is needed to state a claim of excessive force.  As to his second allegation, Edwards states only that Grima "caused [him] personal physical harm" after Grima pressed his "emergency personal alarm device[,]" but he fails to elaborate on what exactly Grima did, how and where it harmed Edwards, and what injury Edwards suffered.  (Id. ¶ 91b).  Edwards' medical treatment claims are similarly deficient, as he alleges only that Grima "said 'no'" after Edwards requested medical assistance and then sent Edwards away to pack up his belongings.  (Id. ¶ 91).  These allegations do not shed light on whether any injury that Edwards suffered was sufficiently serious to warrant medical attention, whether Grima knew of and disregarded an excessive risk to Edwards' health, or even whether there was any risk to Edwards' health.  Accordingly, Edwards has failed to state claims for excessive force and denial of medical treatment, and those claims should be dismissed.

## J.      Deprivation of Access to Prison Grievance System

Throughout the Complaint, Edwards claims that he submitted several grievance letters and complaints to numerous Defendants, who he alleges denied, ignored, never answered, and/or improperly processed his grievances on various dates from July 2007 through February 2009. (Compl. ¶¶ 1-15, 17-20, 21-33, 36-39, 41-45, 48-51, 54-85, 88, 90, 91b, 92-94, 96).  As one example, Edwards states that on September 18, 2007, he wrote a complaint letter to Defendant Horn about Defendant Rosa's use of her cellular phone while on duty, which caused a "security breach."  (Id. ¶ 7).  Edwards alleges that he was denied access to the grievance system because Defendant Mulvena failed to file that grievance (or any of his other grievances) and Defendant Horn did not follow up regarding the complaint.  (Id.).

While a plaintiff has a right "to meaningful access to the court and to petition the government for the redress of grievances" under the First Amendment, Shell v. Brzezniak, 365 F.

Supp. 2d 362, 369-70 (W.D.N.Y. 2005) (citation omitted), the failure to process a grievance does not rise to the level of a constitutional violation.  See, e.g., id. at 370 ("inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable [Section] 1983 claim") (citation omitted); Torres, 246 F. Supp. 2d at 342 ("Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment.") (citations omitted); Cancel, 2001 WL 303713, at *3-4 (violation of grievance procedures does not give rise to claim under First Amendment).  Courts regularly dismiss claims brought to remedy alleged violations of inmate grievance procedures.  See, e.g., id.; Muhammad v. McMickens, No. 86 Civ. 7376 (SWK), 1988 WL 7789, at *3 (S.D.N.Y. Jan. 25, 1998).  Accordingly, because Edwards' claims for alleged violations of the inmate grievance process have no constitutional basis, those claims should be dismissed.[12]

### K.    Retaliation

Edwards alleges that on 17 separate occasions between July 2007 and November 2008, Defendants Campfield, Grima, Hannah, Holmes, John Doe # 1, John Doe # 2, Lagos, Lee, Maynard, Polak, Richardson, Rosa, Shaw, Smalls, and Sumpter retaliated against him in

---

[12]    Related to the allegations about the grievance system, Defendants also assert that Edwards' failure to allege personal involvement for Defendants Bailey (Id. ¶¶ 37, 41, 48, 52), Caruso (Id. ¶¶ 16, 27), Cattafesta (Id. ¶ 80), Davis (Id. ¶¶ 13, 26, 47), Hill (Id. ¶ 63), Horn (Compl. ¶¶ 7, 9, 10, 12, 14-16, 21, 23, 25, 28, 29, 32-35, 39, 41-43, 45, 52, 59, 79, 97), Hourihan (Id. ¶¶ 50, 61, 66, 68, 77, 95, 98), Powell (Id. ¶¶ 57, 78), and Riordan (Id. ¶ 6) provide an independent basis for dismissal.  (Def. Mem. at 14-16).  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983."  Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citation and quotation marks omitted).  An official's failure to respond to a prisoner's letter of protest and request for an investigation, as Edwards is alleging in his Complaint, "is insufficient to hold that official liable for the alleged violations."  Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (citation and quotation marks omitted).  Accordingly, Edwards' claims against these Defendants should be dismissed on this ground as well.

response to his submitting, or informing Defendants that he intended to submit, grievance letters. Edwards' allegations of retaliation include the use of verbal threats or harassment, issuance of infractions, transfers between prison facilities, denials of meals, loss of legal documents, and termination from part-time employment he had while on Rikers Island.

To prove a First Amendment retaliation claim under Section 1983, a prisoner must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) (citations omitted), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). For a retaliation claim to survive a motion to dismiss, it must be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." Friedl v. City of New York, 210 F.3d 79, 86 (2d Cir. 2000) (citation and quotation marks omitted). An "unsupported, speculative, and conclusory" allegation of retaliatory conduct may be dismissed on the pleadings. Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citations and quotation marks omitted).

In reviewing Edwards' retaliation claims, the Court is mindful that "[v]irtually every prisoner can assert such a claim as to every decision which he or she dislikes." Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). Indeed, while the "First Amendment protects prisoners from retaliation for filing grievances[,]" Quezada v. Ercole, No. 09 Civ. 2832 (DLC), 2011 WL 3251811, at *5 (S.D.N.Y. Jul. 29, 2011) (citations omitted), the Court recognizes "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citing Flaherty, 713 F.2d at 13). Moreover, courts should carefully scrutinize an inmate's claims of retaliation because such allegations "pose a substantial

risk of unwarranted judicial intrusion into matters of general prison administration." <u>Hodges v.</u>

<u>Wright</u>, No. 10 Civ. 0531 (GLS) (GHL), 2011 WL 5554866, at *9 (N.D.N.Y. Sept. 29, 2011)

(quoting <u>Dawes</u>, 239 F.3d at 491) (citations omitted) (Report and Recommendation), <u>adopted</u>,

2011 WL 5554880 (N.D.N.Y. Nov. 15, 2011).  Therefore, courts reviewing an inmate's

retaliation claims should do so "with skepticism and particular care."  <u>Colon</u>, 58 F.3d at 872

(citation omitted).

Edwards' allegations, in chronological order, are as follows:  (1) in retaliation for

submitting a grievance against Defendant Morales on July 25, 2007, Morales called Edwards'

housing unit on August 1, 2007 and informed other officers that Edwards had a visitor, when in

fact he did not, which caused him to wait in the inmate visitor process area for two hours (<u>Id.</u> ¶¶

2, 4); (2) in retaliation for an incident where Defendant Hannah said she was made to apologize

to Edwards for "making fun of [his] phsical [sic] disability/and deformity[,]"  Hannah threatened

Edwards on September 5, 2007 by saying "I'm going to get you back for that" (<u>Id.</u> ¶ 6); (3) in

retaliation for filing a grievance against Defendant Rosa on September 18, 2007, Rosa fired

Edwards from his job as a Suicide Prevention Aide and issued an infraction against him on

October 31, 2007 (<u>Id.</u> ¶¶ 14-16); (4) on or around November 1, 2007, after Edwards informed

Defendant Holmes that he intended to submit a grievance against her, Holmes caused Edwards to

be transferred to another housing facility (<u>Id.</u> ¶ 17); (5) in retaliation for filing a grievance

against Holmes on November 2, 2007, Holmes came to Edwards' housing unit and verbally

abused him by "ridicul[ing] and mak[ing] fun of [his] physical disability and deformity" (<u>Id.</u> ¶

19); (6) on or around November 15, 2007, in retaliation for filing a grievance against Rosa, Rosa

informed John Doe officers that Edwards "like[s] to utilize the grievance mechanism against

staff[,]" subsequent to which Edwards was subjected to an unauthorized transfer from "6-Lower"

to "7-Lower" in the EMTC (Id. ¶ 20); (7) on or around November 25, 2007, in retaliation for Edwards' filing a grievance against Rosa, Defendants Hernandez and Smith retaliated against Edwards by informing another inmate that Edwards was a "snitch," which "cause[d] [Edwards] physical harm by other inmate's [sic] within [the] housing unit" (Id. ¶¶ 24, 26); (8) in retaliation for submitting a grievance against Defendants Campfield and Reyes on or around March 22, 2008, Defendant Shaw had Edwards transferred out of the GRVC on March 25, 2008 (Id. ¶ 34); (9) on or around April 1, 2008, in retaliation for submitting a grievance against her, Campfield intentionally lost Edwards' legal documents relating to the NDNY action (Id. ¶ 36); (10) after filing a grievance on June 27, 2008, Edwards was transferred out of the GMDC that same day, which he says was approved by Defendant Bailey (Id. ¶¶ 48, 52); (11) after Edwards informed Defendant Richardson that he planned to file a grievance against her because she refused to turn off the lights in his jail cell on July 30, 2008, Richardson retaliated by denying Edwards his "morning meal" on July 31, 2008 (Id. ¶ 53); (12) in retaliation for filing a grievance against him, Richardson put a "hit out" by offering 20 boxes of Frosted Flakes cereal to any inmate that physically assaulted Edwards, for which Edwards filed a grievance on August 7, 2008 (Id. ¶ 55); (13) on August 18, 2008, in retaliation for informing a supervisor that Defendant Smalls was "only providing certain detainees with options on the hour every hour" in the law library, Smalls verbally abused Edwards (Id. ¶ 61); (14) on or around August 25, 2008, in retaliation for Edwards' use of the grievance mechanism against her, Defendant Smalls retaliated against Edwards through verbal abuse, threatening to have Edwards transferred, and informing other inmates that Edwards uses the grievance process (Id. ¶ 66); (15) on or around September 24, 2008, in retaliation for filing numerous grievances against them, Defendants Maynard and Musmacher conspired to retaliate against Edwards by threatening physical violence and issuing

27

an infraction, which resulted in a disciplinary hearing on September 30, 2008 (Id. ¶¶ 83, 87,

87b); (16) after Edwards informed Defendant Lagos on October 17, 2008 that he planned to file

a grievance against her because of alleged racial discrimination, Lagos retaliated by denying

Edwards his "afternoon meal" on October 18, 2008 (Id. ¶ 90); and (17) after Edwards informed

Defendant Grima that he intended to submit a grievance about his alleged physical assault with a

"pushdraw" on November 1, 2008, Grima retaliated by threatening physical harm, pressing his

"emergency personal alarm device," issuing an infraction, and causing Edwards to be transferred

to a new housing unit (Id. ¶¶ 91, 91b).

### 1.    Protected Activity

It is well-established that "retaliation against a prisoner for pursuing a grievance violates

the right to petition government for the redress of grievances" and is therefore actionable under

Section 1983.  Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) (citation omitted); see, e.g.,

Mateo v. Fischer, 682 F. Supp. 2d 423, 433-34 (S.D.N.Y. 2010) (filing of a grievance is a

protected activity).  However, expressing an intent to engage in a constitutionally protected

activity—in this case, filing a grievance—is not protected activity.  See Henry v. Dinelle, No. 09

Civ. 0456 (GTS) (DEP), 2011 WL 5975027, at *7 n.12 (citing cases) & n.13 (N.D.N.Y. Nov. 29,

2011) ("Hoping to engage in constitutionally protected activity is not itself constitutionally

protected activity.  At most, petitioner's actions could be construed as a 'threat' to assert his

rights but that is not enough.") (citing McKinnie v. Heisz, No. 09 Civ. 0188 (BBC), 2009 WL

1455489, at *11 (W.D. Wis. May 7, 2009)).  In light of these principles, Edwards' allegations of

retaliation in response to his submitting grievance letters constitute protected activities.

However, Edwards' allegations of retaliatory conduct arising from his expressing an intent to file

a grievance—those allegations occurring on or about November 1, 2007 (Compl. ¶ 17), July 31,

2008 (Id. ¶ 53), October 18, 2008 (Id. ¶ 90), and November 1, 2008 (Id. ¶¶ 91, 91b)—are not

protected activities and therefore cannot form the basis of a claim for retaliation.[13]

### 2.    Adverse Actions

Having determined that four of Edwards' allegations of retaliation fail because he was

not engaged in a constitutionally protected activity, the Court now considers whether the

remaining 13 allegations meet the adverse action requirement.  "[I]n the prison context [the

Second Circuit has] defined 'adverse action' objectively, as retaliatory conduct that would deter

a similarly situated individual of ordinary firmness from exercising . . . constitutional rights."

Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004) (citations and quotation marks omitted).

An inmate can meet this requirement by "alleging a serious injury that is independent of a

possible First Amendment chill, or by alleging that he has been chilled from engaging in the First

Amendment activities that triggered the retaliation."  Smith v. Maypes-Rhynders, No. 07 Civ.

11241 (PAC) (MHD), 2009 WL 874439, at *4 (S.D.N.Y. Mar. 31, 2009).  "Otherwise, the

retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection."

Dawes, 239 F.3d at 493 (citation omitted).  "[T]his objective test applies even where a particular

plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and

lawsuits."  Gill, 389 F.3d at 381.  In applying this objective test to determine whether conduct is

de minimis, the Court must consider that "[p]risoners may be required to tolerate more . . . than

---

[13]    Moreover, of the four allegations of retaliation that are not based on protected activities,
two cannot be considered adverse actions—concerning Defendant Richardson on July 31,
2008 (Compl. ¶ 53) and Defendant Lagos on October 18, 2008 (Id. ¶ 90)—because both
of these allege that these Defendants retaliated against Edwards by denying him a meal.
The denial of meals on two occasions, separated by more than three months, is de
minimis and not actionable.  See, e.g., Snyder v. McGinnis, No. 03 Civ. 0902E (WMS),
2004 WL 1949472, at *11 (W.D.N.Y. Sept. 2, 2004) (denial of food to plaintiff two times
would not chill First Amendment activity).

average citizens, before a [retaliatory] action taken against them is considered adverse." Davis, 320 F.3d at 353 (citation and quotation marks omitted).

### a.      Retaliatory Verbal Abuse

Several of Edwards' allegations of retaliation are based on verbal harassment, abuse, or threats.  (See Compl. ¶¶ 2, 4, 6 ("I'm going to get you back for that."), 19, 24 (calling Edwards a "snitch"), 26, 55 (putting a "hit out" on Edwards to any inmate that "fucks Edwards up"), 61 (calling Edwards a "crackhead" and "one arm faggot"), 66).  While "some verbal threats, even if not serious enough to implicate the Eighth Amendment, can constitute an adverse action[,]" Mateo, 682 F. Supp. 2d at 434 (citations omitted), "[n]on-specific verbal threats, harassing comments and hostile behavior do not constitute adverse actions sufficient to state a retaliation claim." Ross v. Westchester Cnty. Jail, No. 10 Civ. 3937 (DLC), 2012 WL 86467, at *7 (S.D.N.Y. Jan. 11, 2012).  "[V]erbal threats may constitute adverse action, though whether they constitute adverse action seems to depend on their specificity and the context in which they are uttered." Hofelich v. Ercole, No. 06 Civ. 13697 (PKC), 2010 WL 1459740, at *2 (S.D.N.Y. Apr. 8, 2010) (citation and quotation marks omitted).

Here, Edwards' claims of retaliatory verbal abuse do not include any allegations of harm, nor are they alleged with any specificity to suggest that they would deter others from exercising their constitutional rights.  Several of his claims allege only that Edwards was forced to endure verbal abuse, but do not explain what was said and why that abuse was in any way adverse.  And where Edwards has detailed the nature of the verbal abuse, his allegations are either de minimis—for example, in the case of being told he had a visitor when he in fact did not—amount to name-calling, or are insufficiently direct or specific to be adverse.  See, e.g., Dawes, 239 F.3d at 492-93 (referring to plaintiff as an "informant" and "rat" in presence of other inmates not an

adverse action); <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 109 (2d Cir. 2000) (referring to transsexual

inmate as "he/she" was "rudeness and name-calling" but not a constitutional violation); <u>Purcell</u>

<u>v. Coughlin</u>, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam) (name-calling, without any

appreciable injury, not a constitutional violation); <u>Kemp v. LeClaire</u>, No. 03 Civ. 844S (WMS),

2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007) (threats of "your day is coming," "you'll be

sent to your mother in a black box," and "you'll get your black ass kicked" not adverse actions);

<u>Battice</u>, 2006 WL 2190565, at *6-7 (defendant's making fun of plaintiff's disability does not

constitute adverse action).  Accordingly, Edwards' charges of retaliation that allege only

retaliatory verbal abuse—on August 1, 2007 (Compl. ¶¶ 2, 4), September 5, 2007 (<u>Id.</u> ¶ 6),

November 2, 2007 (<u>Id.</u> ¶ 19), November 25, 2007 (<u>Id.</u> ¶¶ 24, 26), August 7, 2008 (<u>Id.</u> ¶ 55),

August 18, 2008 (<u>Id.</u> ¶ 61), and August 25, 2008 (<u>Id.</u> ¶ 66)—should be dismissed.

### b.      Retaliatory Loss of Legal Documents

Courts have held that theft, confiscation, or destruction of an inmate's legal documents

may constitute an adverse action.  <u>See</u>, <u>e.g.</u>, <u>Smith</u>, 2009 WL 874439, at *5 (theft of legal papers

is adverse action).  However, "mere delays in the transfer of [an inmate's] legal papers, even if

motivated by retaliation, is not the type of adverse action required to support a retaliation claim."

<u>Ford v. Fischer</u>, No. 09 Civ. 723 (DNH) (ATB), 2011 WL 856416, at *8 (N.D.N.Y. Jan. 31,

2011); <u>see</u>, <u>e.g.</u>, <u>Rivera v. Pataki</u>, No. 04 Civ. 1286 (MBM), 2005 WL 407710, at *19 (S.D.N.Y.

Feb. 7, 2005) (several temporary incidents of interference with plaintiff's legal documents not an

adverse action).  Here, because Edwards has pled an injury in connection with this allegation—

Defendant Campfield's allegedly retaliatory loss of his legal documents prevented him from

prosecuting the NDNY action (Compl. ¶ 36), which was subsequently dismissed for failure to

prosecute, <u>see</u> <u>Selsky</u>, 2008 WL 190385, at *1—it contains sufficient facts to constitute an adverse action.

### c. Retaliatory Filing of Infractions

Edwards alleges that Defendants Maynard, Musmacher, and Rosa issued false infractions against him on or about October 31, 2007 (Compl. ¶¶ 14-16; Dkt. No. 2-6 at 18) and September 24, 2008 (<u>Id.</u> ¶¶ 83, 87, 87b) in retaliation for filing grievances. While an "inmate has no general constitutional right to be free from being falsely accused in a misbehavior report[,]" <u>Boddie</u>, 105 F.3d at 862, a misbehavior report issued in retaliation for an inmate's exercise of a protected activity may constitute an adverse action. <u>See</u> <u>Gayle v. Gonyea</u>, 313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under [Section] 1983.") (citation omitted); <u>see</u>, <u>e.g.</u>, <u>Gill</u>, 389 F.3d at 384 (false misbehavior report and placement in keeplock constitutes adverse action); <u>Mateo</u>, 682 F. Supp. 2d at 434 (false misbehavior report constitutes adverse action). Accordingly, Edwards' allegations that these Defendants filed false retaliatory infractions against him are sufficient to plead an adverse action.

### d. Retaliatory Transfers

Edwards' allegations that Defendants Bailey, Bethacourt, Hannah, John Doe # 1, John Doe # 2, Rosa, and Shaw transferred Edwards between prison facilities in retaliation for submitting grievances are also sufficient to establish an adverse action at the motion to dismiss stage. (<u>See</u> Compl. ¶¶ 20, 34, 48, 52). While a "prisoner has no liberty interest in remaining at a particular correctional facility . . . prison authorities may not transfer [him] in retaliation for the exercise of constitutionally protected rights." <u>Davis v. Kelly</u>, 160 F.3d 917, 920 (2d Cir. 1998)

(citations omitted); see, e.g., Soto v. Iacavino, No. 01 Civ. 5850 (JSM), 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003) (prison housing transfer is adverse action for retaliation claim).

### e.   Retaliatory Termination

Finally, Edwards' allegation that Defendant Rosa fired him from his position as a Suicide Prevention Aide states sufficient facts to constitute an adverse action.  (Compl. ¶¶ 14-16; Dkt. No. 2-6 at 18).  "[A] claim for relief may be stated under [S]ection 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights."  Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (citation omitted).  More specifically, an inmate can bring a claim under Section 1983 for termination of employment in retaliation for his exercise of constitutionally protected rights.  See, e.g., Baker v. Zlochowon, 741 F. Supp. 436, 439 (S.D.N.Y. 1990).  The termination of Edwards' job, if found to be retaliatory, could serve to "chill a person of ordinary firmness from continuing to engage" in a protected activity. Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999) (quoted in Davis, 320 F.3d at 353).

### 3.   Causal Connection

Of his six allegations of retaliation that meet the adverse action requirement—those dated October 31, 2007, November 15, 2007, March 25, 2008, April 1, 2008, June 27, 2008, and September 24, 2008—all but one should be dismissed.  Edwards has not alleged any facts, as he must, that his filing of grievances was a "substantial or motivating factor" for Defendants' actions.  Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted).  In addressing the causal connection requirement, a court may consider:  (1) the temporal proximity between the protected conduct and the alleged retaliatory act, (2) the inmate's prior disciplinary record, (3) vindication at a hearing on the matter, and (4) any statements by the defendants regarding their motives.  See Colon, 58 F.3d at 872-73.  However, "a complaint which alleges retaliation in

33

wholly conclusory terms may safely be dismissed on the pleadings alone." Flaherty, 713 F.2d at 13.

With the exception of his claim arising on October 31, 2007, Edwards' allegations of retaliation are wholly conclusory. Edwards does not set forth any specific facts, other than his repeated use of the word "retaliation," to support his suspicion of retaliation or to suggest that Defendants were motivated in any way by Edwards' filing grievance letters. On several occasions, Edwards appears to rely on the mere fact that the purported adverse actions took place after he filed a grievance. To infer causation from the very fact that one activity preceded another, however, is insufficient here to adequately plead retaliatory intent. Temporal proximity may serve as circumstantial evidence of retaliation, see, e.g., Colon, 58 F.3d at 872, and the Second Circuit has found that such proximity can establish causality. See Espinal v. Goord, 558 F.3d 119, 129-30 (2d Cir. 2009) (causal connection present where six months passed between protected activity and retaliatory beating); but see Sloane v. Mazzuca, No. 04 Civ. 8266 (KMK), 2006 WL 3096031, at *14 (S.D.N.Y. Oct. 31, 2006) (temporal proximity insufficient by itself to prove causation) (citations omitted); Nunez v. Goord, 172 F. Supp. 2d 417, 431-32 (S.D.N.Y. 2001) (same). But in this case, Edwards' reliance on temporal proximity does not make his claims plausible, as he fails to differentiate between his seemingly innumerable grievances or provide specific factual allegations, including but not limited to concrete dates, that might demonstrate any nexus between a specific grievance and a specific adverse action. See, e.g., Andino v. Fischer, 698 F. Supp. 2d 362, 385 (S.D.N.Y. 2010) (proximity between complaints and adverse actions the result of large number of grievances in short period of time).

In addition to Edwards' failure to plead any facts suggesting retaliation, the facts that Edwards chose to include in the Complaint suggest a relationship between protected activity and

adverse action that is too attenuated to plausibly constitute causation.  For example, Edwards

theorizes that on November 15, 2007 he was transferred by Defendant John Doe # 2 in retaliation

for filing a grievance against Rosa, after Rosa informed John Doe # 1, who then informed John

Doe # 2, of Edwards' use of the grievance mechanism.  (Compl. ¶ 20).  However, absent any

additional information, such as corroborating statements from other officers or inmates, it is

simply not plausible to impute a retaliatory motive to John Doe # 2 by way of John Doe # 1 and

Rosa.  Edwards' allegations of March 25, 2008 suffer the same deficiency, as he aims to pin a

retaliatory motive not on the target of his protected activity, but on an entirely different

Defendant.  (Id. ¶ 34).  Apart from any apparent temporal proximity, therefore, Edwards'

allegations are wholly conclusory and should be dismissed.  See, e.g., Sioleski v. McGrain, No.

10 Civ. 0665S (WMS), 2012 WL 32423, at *4 (W.D.N.Y. Jan. 5, 2012); Douglas v. Smith, No.

05 Civ. 1000 (LEK) (DRH), 2008 WL 434605, at *15 (N.D.N.Y. Feb. 14, 2008).

      By contrast, Edwards is able to state an actionable claim of retaliatory termination against

Rosa based on his allegations of October 31, 2007.  Edwards states that on September 18, 2007,

he submitted a grievance letter regarding Defendant Rosa's alleged use of her personal cell

phone while on duty, which Edwards contends is a "security breach."  (Compl. ¶ 7).  Then, on

October 31, 2007, while he was working as a Suicide Prevention Aide, Edwards alleges that

Rosa stated, "Watch your mouth boy before I write you.  You like writing anyway."  (Dkt. No.

2-6 at 18).  Edwards asked another officer for a grievance form, intending to submit another

grievance against Rosa, at which point Rosa stated:  "What lies are you going to write on me

now stupid nigger.  The cellphone lie didn't work nigger.  All you are nigger is a snitch don't

worry, you're going to get yours.  I'm going to make sure you get fuck up nigger."  (Id.).

Moments later, Rosa returned and asked for Edwards' identification card, stating, "I'm writing

you up nigger.  Two can play that game and also nigger you're fired.  Morales get this nigger out of here now."  (Id.).

These statements clearly suggest a retaliatory animus.  See, e.g., Baskerville v. Blot, 224 F. Supp. 2d 723, 732-33 (S.D.N.Y. 2002) (defendant's comments during assault point to retaliatory animus).  In mentioning the "cellphone lie," which likely refers to Edwards' September 18 grievance about Rosa's use of her personal cell phone, Rosa's comments establish a clear causal link between Edwards' protected activity and Rosa's decision to terminate Edwards from his job and issue an infraction against him.  See, e.g., Headley v. Fisher, No. 06 Civ. 6331 (PAC) (KNF), 2008 WL 1990771, at *18 (S.D.N.Y. May 7, 2008) (causal connection exists where officer referred to protected activity during retaliatory assault).  Accordingly, Edwards has stated a plausible claim of retaliatory termination against Rosa, and Defendants' motion to dismiss that claim should be denied.

### L.  Conspiracy

Edwards alleges four conspiracy claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, specifically that (1) on October 31 and November 1, 2007, Rosa and Polak conspired to fire Edwards from his job as a Suicide Prevention Aide and issue an infraction against him (Compl. ¶¶ 14-16); (2) as described in a complaint letter dated July 10, 2008, Defendant Johnson conspired with "the security staff" to violate Edwards' constitutional rights by not filing his grievances (Id. ¶ 50); (3) as described in a complaint letter dated August 28, 2008, Defendants Johnson and Sumpter conspired to deny Edwards access to the prison's grievance system (Id. ¶ 69); and (4) as described in a September 24, 2008 grievance letter, Defendants Maynard and Musmacher conspired to issue threats of physical violence and submit a false infraction against Edwards.  (Id. ¶ 83).

### 1.     Conspiracy Under Section 1983

To state a conspiracy claim under Section 1983, a plaintiff must show "(1) an agreement between [two or more state actors or] a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. Cnty of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002) (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)).  "[A] plaintiff must show that defendants acted in a willful manner, culminating in an agreement, understanding, or meeting of the minds, that violated [his] rights, privileges or immunities secured by the Constitution or federal courts." Bussey v. Phillips, 419 F. Supp. 2d 569, 586-87 (S.D.N.Y. 2006) (quotation marks and citations omitted).  "[C]omplaints containing only conclusory, vague, or general allegations [of conspiracy] . . . are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Ciambriello, 292 F.3d at 325 (citation and quotation marks omitted).  Finally, "[a] violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right." Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (citation omitted).  If a plaintiff fails to show an underlying constitutional violation on which to base a Section 1983 conspiracy claim, the conspiracy claim fails as a matter of law.  See, e.g., AK Tournament Play, Inc. v. Town of Wallkill, No. 09 Civ. 10579 (LAP), 2011 WL 197216, at *3-4 (S.D.N.Y. Jan. 19, 2011), aff'd, 444 F. App'x 475 (2d Cir. 2011).

Each of Edwards' conspiracy claims should be dismissed because he has failed to state any underlying constitutional violations, with the exception of his retaliatory termination claim against Rosa.  Moreover, even if the Court were to find that Edwards could state plausible constitutional claims as a predicate for conspiracy, he fails to state any non-conclusory

allegations pertaining to the existence of a conspiracy, a meeting of the minds to support a

conspiracy claim, or any overt acts which would suggest the existence of a conspiracy.

Edwards' statements that certain Defendants "conspired" with others is not, by itself, sufficient

to state an actionable claim for conspiracy.  See Nealy v. Berger, No. 08 Civ. 1322 (JFB) (AKT),

2009 WL 704804, at *5 (E.D.N.Y. Mar. 16, 2009) ("The mere use of the term 'conspiracy' . . . is

clearly insufficient to satisfy Rule 12(b)(6) in connection with a Section 1983 conspiracy

claim.") (citation omitted).  The only claim for which Edwards alleges any facts is that Rosa and

Polak conspired to retaliate against him.  However, the statements that he attributes to Polak—

"my girl said you are fired" and "you are not getting your job back" (Compl. ¶ 15)—do not

suggest any understanding, agreement, or meeting of the minds between these two Defendants.

Polak's reinforcement of Rosa's decision to fire Edwards, at best, suggests only that Polak sided

with Rosa's decision, but it is not sufficient to state a conspiracy claim.  Absent any actionable

allegations of a conspiratorial understanding between Polak and Rosa, Edwards' conspiracy

claims fail.

### 2.        Conspiracy Under Section 1985

42 U.S.C. §1985(2) and (3) also provide relief for claims of conspiracy.  To plead a claim

under Section 1985(2), a plaintiff must show "(1) a conspiracy (2) for the purpose of impeding,

hindering, obstructing, or defeating, in any manner, (3) the due course of justice in any State or

Territory, (4) with intent to deny to any citizen the equal protection of the laws, or to injure him

or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class

of persons, to the equal protection of the laws."  Rodriguez v. City of New York, No. 05 Civ.

10682 (PKC) (FM), 2008 WL 4410089, at *15 (S.D.N.Y. Sept. 25, 2008) (citing 42 U.S.C. §

1985(2)).  The elements of a claim under Section 1985(3) are:  "'(1) a conspiracy; (2) for the

purpose of depriving, either directly or indirectly, any person or class of persons of equal

protection of the laws, . . . ; (3) an act in furtherance of the conspiracy; (4) whereby a person is . .

. deprived of any right of a citizen of the United States.'" Id. (quoting Brown v. City of Oneonta,

221 F.3d 329, 341 (2d Cir. 2000)).

As with Section 1983 conspiracy claims, Section 1985 claims require a showing of an

underlying constitutional violation.  See, e.g., Okoh v. Sullivan, No. 10 Civ. 2547 (SAS), 2011

WL 672420, at *4 (S.D.N.Y. Feb. 24, 2011), aff'd, 441 F. App'x 813 (2d Cir. 2011); Bishop v.

Best Buy, Co., No. 08 Civ. 8427 (LBS), 2010 WL 4159566, at *13 (S.D.N.Y. Oct. 13, 2010).

Because Edwards has not set forth sufficient facts to state any constitutional violations, with the

exception of his retaliatory termination claim against Rosa, his Section 1985 claims should be

dismissed as well.  Even if the Court were to find any underlying constitutional violations,

including the surviving retaliation claim, the Section 1985 claims should be dismissed because

Edwards has failed to allege any facts, as he must, that Defendants' conspiracies were motivated

not by any personal malice of the conspirators toward him, but rather by "'some racial, or

perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

animus.'"  United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983) (citation

omitted); accord Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir.

1993) (per curiam); Okoh, 2011 WL 672420, at *6.

### 3.    Conspiracy Under Section 1986

To state a claim under Section 1986, a plaintiff must state a valid claim under Section

1985.  "Section 1986 imposes liability on individuals who have knowledge of a conspiracy under

[Section] 1985, but fail to take action to prevent them."  Jenkins v. N.Y. City Dep't of Educ., No.

10 Civ. 6159 (BSJ) (THK), 2011 WL 5451711, at *5 (S.D.N.Y. Nov. 9, 2011) (citing 42 U.S.C.

§ 1986).  A Section 1986 claim "must be predicated upon a valid [Section] 1985 claim."  Brown, 221 F.3d at 341 (citation and quotation marks omitted).  Because Edwards fails to state a claim under Section 1985 and otherwise fails to make any allegations that certain Defendants had knowledge of a conspiracy but failed to prevent it, the Court should also dismiss his Section 1986 claim.

### M.    Disability Discrimination Claim

Edwards asserts that on five occasions he was discriminated against on the basis of an alleged disability in violation of Title II of the ADA.  (Compl. ¶¶ 6, 17, 19, 30, 61).  To state a claim under Title II, which applies to inmates in state prisons, see United States v. Georgia 546 U.S. 151, 153 (2006), a prisoner must show:  (1) "he is a 'qualified individual' with a disability"; (2) "he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity"; and (3) "such exclusion or discrimination was due to his disability."  Phelan v. Thomas, 439 F. App'x 48, 50 (2d Cir. 2011) (citing Hargrave v. Vermont, 340 F.3d 27, 34-35 (2d Cir. 2003)); see 42 U.S.C. § 12132.

Although Defendants have moved to dismiss the Complaint in its "entirety" (Def. Mem. at 49), they have failed to offer any specific arguments to dismiss Edwards' ADA claims.  (See Def. Mem. at 3).  Nevertheless, these claims should be dismissed.  It appears from the Complaint that Edwards' alleged disability is that one of his arms is significantly shorter than the other, and his discrimination claims arise from Defendants' comments allegedly mocking this deformity. Leaving aside the question of whether Edwards' deformity falls under the ADA's definition of disability, Edwards fails to state that Defendants excluded him from participating in, or denied him the benefit of, any particular activity as a result of his alleged disability.  Edwards' allegations of objectionable language are not sufficient to state a claim under the ADA.

### N.     Edwards' Potential Recovery Is Limited to Nominal or Punitive Damages From Rosa

In his Complaint, Edwards seeks both money damages and injunctive relief.  (Compl. ¶ V).  However, because of qualified immunity, Edwards can only obtain monetary damages from Defendant Rosa and, because of the PLRA, that recovery is limited to nominal or punitive damages.  In addition, Edwards' request for injunctive relief is moot because he is no longer in prison.

#### 1.     Qualified Immunity Precludes Money Damages, Except From Rosa

Qualified immunity provides a basis to preclude monetary damages, but not injunctive relief.  See Morse v. Frederick, 551 U.S. 393, 432 (2007) (citation omitted).  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  A state actor is afforded qualified immunity if either "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001) (citations and quotation marks omitted).  Because Edwards has failed to plead facts showing that Defendants violated any constitutional right, with the exception of his claim for retaliatory termination against Rosa, Defendants are entitled to qualified immunity for each of Edwards' claims.

However, as to Edwards' surviving retaliation claim, Defendant Rosa is not entitled to qualified immunity.  Courts have long recognized, well before the time of Edwards' allegations, that inmates have a constitutional right to seek redress of grievances without suffering retaliation.

41

See Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988); see, e.g., Baskerville, 224 F. Supp. 2d at

737-38 (no qualified immunity for retaliation claim because right to file grievances without

retaliation is well-established); Wells v. Wade, 36 F. Supp. 2d 154, 160 (S.D.N.Y. 1999) (same).

Here, Edwards has alleged intentional conduct by Rosa in response to a protected activity,

adequately stating a cause of action for retaliation.  Moreover, Defendants have offered no

argument that Rosa's conduct was objectively reasonable.  Accordingly, at the pleading stage,

Rosa is not entitled to qualified immunity from monetary damages on Edwards' retaliatory

termination claim against her.

### 2.    Any Money Damages from Rosa Are Limited to Nominal or Punitive Damages

In light of the qualified immunity finding above, Edwards' recovery of monetary

damages, if any, is limited to Rosa.  Because of the PLRA's physical injury requirement,

however, that recovery from Rosa cannot include compensatory damages.  Defendants argue that

all of Edwards' claims are barred by the PLRA because he does not allege that he has suffered

any physical injury.  (Def. Mem. at 46-48).  Section 1997e(e) of the PLRA provides that "'[n]o

Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional

facility, for mental or emotional injury suffered while in custody without a prior showing of

physical injury.'"  Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quoting 42 U.S.C. §

1997e(e)).  The term "physical injury" is not statutorily defined; however, the injury complained

of must be more than de minimis to meet the requirements of § 1997e(e).  See Liner v. Goord,

196 F.3d 132, 135 (2d Cir. 1999).  Therefore, in the absence of a showing of physical injury, a

prisoner cannot recover compensatory damages for mental or emotional injury.  Thompson, 284

F.3d at 417.  To recover punitive or nominal damages, however, a prisoner need not allege that

he has sustained a physical injury.  Id. at 418; see also Abreu v. Nicholls, No. 04 Civ. 7778

(DAB) (GWG), 2011 WL 1044373, at *4 (S.D.N.Y. Mar. 22, 2011) (Report and

Recommendation); Walker v. Shaw, No. 08 Civ. 10043 (CM), 2010 WL 2541711, at *15

(S.D.N.Y. June 23, 2010) (citing Robinson v. Cattaraugus, 147 F.3d 153, 162 (2d Cir. 1998)).

      Edwards does not allege that he has suffered any physical injury as a result of his alleged

constitutional violations, including his allegation of excessive force, which does not mention any

temporary or permanent physical injury as a result of Defendants' actions.  See supra Section

II.I.  The only injuries that Edwards complains about are the "loss of amenity" and "limited

liberty" as a result of his segregated confinement, and emotional distress arising from the

"embarrass[ment]" caused by Defendants' ridiculing his physical deformity.  (Compl. ¶ V).

Neither of these injuries constitutes a physical injury under the PLRA.  See, e.g., Henry, 2011

WL 3295986, at *4 (no physical injury where inmate complained of embarrassment); Wilson v.

Phoenix House, No. 10 Civ. 7364 (DLC), 2011 WL 3273179, at *3 (S.D.N.Y. Aug. 1, 2011)

(confinement not enough, by itself, to fulfill physical injury requirement).  Accordingly, in the

absence of any allegations of physical injury, Edwards' claims against Defendants (including his

surviving retaliation claim against Rosa) should be dismissed insofar as he seeks compensatory

damages, and he should be limited to seeking nominal or punitive damages from Rosa.  See, e.g.,

Brummell v. Stewart, No. 09 Civ. 10326 (PAC) (FM), 2011 WL 1306170, at *4 (S.D.N.Y. Mar.

24, 2011) (Report and Recommendation) (claims seeking compensatory damages dismissed

because no allegation of physical injury suffered); Kasiem v. Rivera, No. 09 Civ. 9665 (DLC),

2011 WL 166929, at *10 (S.D.N.Y. Jan. 18, 2011) (request for compensatory damages for

emotional injuries stricken from complaint).

### 3.      Edwards' Request for Injunctive Relief Is Moot

By letter dated December 11, 2011, Edwards informed the Court that he has been released from prison.  (Dkt. No. 135).  This factual development renders moot Edwards' request for injunctive relief.  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983).  Under that principle, an inmate's request for injunctive and declaratory relief against correctional staff at a particular correctional institution becomes moot when the inmate is discharged.  See Muhammad v. City of N.Y. Dep't of Corr., 126 F.3d 119, 123 (2d Cir. 1997); see, e.g., Khalil v. Laird, 353 F. App'x 620, 621 (2d Cir. 2009) (injunctive and declaratory relief moot because inmate released from prison); Sheppard v. Lee, No. 10 Civ. 6696 (GBD) (JLC), 2011 WL 5314450, at *4 n.6 (S.D.N.Y. Nov. 7, 2011) (declaratory and injunctive relief claims moot because inmate no longer incarcerated) (Report and Recommendation), adopted, 2011 WL 6399516 (S.D.N.Y. Dec. 20, 2011).  Accordingly, because Edwards has been released from prison, his claims for injunctive relief should be dismissed.[14]

---

[14]      In addition, Edwards cannot establish a likelihood of success on the merits or the possibility of irreparable injury as required for any injunctive relief.  Even assuming he could however, and to the extent Edwards' claims for injunctive relief are not moot, the PLRA extends prospective relief "no further than necessary to correct the violation of the Federal right of a particular plaintiff[,]" 18 U.S.C. § 3626(a)(1)(A), and the relief Edwards seeks—terminating Defendants from their positions and enjoining them from future government employment—is not "narrowly drawn."  Id.; see also Barrington v. New York, 806 F. Supp. 2d 730, 750 (S.D.N.Y. 2011) (proposed order directing installation of security cameras beyond narrow scope permitted by PLRA); Easter v. CDC, 694 F. Supp. 2d 1177, 1188-90 (S.D. Cal. 2010) (inmate not entitled to injunctive relief preventing officials from future supervision or control over him when inmate no longer in facility where attack took place, and no indication of imminent injury).

### III.   <u>CONCLUSION</u>

For the foregoing reasons, I recommend that Defendants' motion to dismiss be granted as to Edwards' claims for verbal harassment, deprivation of access to free telephone calls, deprivation of access to legal services, mail tampering, denial of required food portions, unconstitutional strip search, violation of due process rights within the prison's disciplinary and grievance system, excessive force and denial of medical treatment, deprivation of access to the prison's grievance system, retaliation (against all Defendants except Rosa for Edwards' termination), conspiracy, and disability discrimination under the ADA.  I further recommend that the motion to dismiss be denied only as to Edwards' retaliatory termination claim against Defendant Rosa to the extent Edwards seeks nominal or punitive damages against her.

### <u>PROCEDURE FOR FILING OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Sullivan.  **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  If Plaintiff does not have access to cases cited herein that are reported on LexisNexis or Westlaw,

he should request copies from Defendants' counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d

Cir. 2009).

Dated: New York, New York
        February 14, 2012

JAMES L. COTT
United States Magistrate Judge


**Copies of this Report and Recommendation have been sent by mail to:**

William Edwards
660 Hegeman Avenue, Apt. 6-D
Brooklyn, NY 11207

Noreen M. Stackhouse
New York City Law Department
100 Church Street
New York, NY 10007